UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

| | |
|---|---|
| In re | Chapter 13 |
| **SCOTT H. SHEPHERD and** | Case No. 09-19185-JNF |
| **MICHELLE F. SHEPHERD,** | |
| Debtors | |

~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matters before the Court are: 1) the objection by the debtors, Scott H. Shepherd and Michelle F. Shepherd (the "Debtors") to the secured proof of claim filed by America's Servicing Company ("ASC"), as servicer for Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee for First Franklin Mortgage Loan Trust 2006-FF11 (the "Claim"); and 2) the Application for Compensation of Harmon Law Offices P.C. ("HLO") (the "Application"), as attorneys for ASC and Deutsche Bank, through which it seeks $1,595.00 in legal fees and $2,892.48[1] in other charges and expenses incurred in connection with the Debtors' default on a mortgage held by Deutsche Bank.

**II. FACTS**

The Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code

---

[1] These amounts were included in the Claim and presumably have been paid to HLO by its client(s).

1

on September 28, 2009. On Schedule D - Creditors Holding Secured Claims, the Debtors listed ASC as the holder of a first mortgage in the amount of $227,127.61 on their condominium located at 15 Bower Road, Quincy, Massachusetts (the "property"). On November 6, 2009, ASC filed the Claim, asserting a secured claim in the amount of $254,450.98, including "arrearage and other charges" totaling $28,652.84. ASC appended to the Claim a copy of a mortgage executed by the Debtors on May 26, 2006 in favor of MERS as mortgagee and "First Franklin a Division of Nat. City Bank of IN," as lender.[2] In support of the arrears and other charges, ASC also attached to the Claim an itemized statement of additional charges which provided, in part, the following:

| **Itemized statement of pre-petition arrearage** | |
|---|---|
| [1] 10 payments at $2,058.05 (12/1/08-9/1/09) | $20,580.50 |
| [2] Accrued Late Fees | $     476.64 |
| [3] Accrued Foreclosure Legal Fees and Costs | $  4,487.48 |
| [4] Property Inspections/Preservation | $     121.25 |
| [5] Appraisal/BPO Fee | $       95.00 |
| [6] Escrow Shortage | $  2,591.97 |
| [7] Post Petition Pre-Confirmation Legal Fees and Costs | $     300.00 |
| TOTAL | $28,652.84 |

On November 11, 2009, ASC filed an Objection to the Debtor's Chapter 13 Plan, alleging that the prepetition arrears on its claim totaled $28,652.84, rather than $19,000.00

---

[2] Pursuant to an Assignment dated Match 12, 2009, MERS assigned the mortgage to Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11.

as provided by the Debtors in their plan. On December 17, 2009, the Debtor objected to the Claim (the "Objection") on the basis that all of the above expenses and specifically the "Accrued Foreclosure Legal Fees and Costs," (item 3) totaling $4,487.48, and the "Escrow Shortage," (item 6) totaling $2,591.97, were not supported by documentation, as required by Fed. R. Bankr. P. 3001(a) and were otherwise excessive and unreasonable. The Court conducted a hearing on the Objection and ASC's response on February 18, 2010 and directed ASC to file an application for compensation pursuant to MLBR 2016-1, with all appropriate itemizations and documentation including invoices from third party vendors to support the legal fees and costs asserted in the Claim. The Court, in its Order, further indicated that it would determine the matter based upon those submissions unless either party requested oral argument or an evidentiary hearing by March 25, 2010. The Court continued ASC's objection to confirmation generally pending disposition of the Objection to Claim.

On March 5, 2010, HLO filed the Application, as foreclosure and bankruptcy counsel for ASC and Deutsche Bank, seeking legal fees and costs totaling $4,487.48 (see item 3 above), $1,550.00 of which was the flat rate legal fee charged for the foreclosure plus an additional $45.00 for HLO's services in connection with delinquent condominium fees on the property. According to the Application, HLO's actual time billed for foreclosure services totaled $1,711.10, which is $161 greater than the $1,550.00 foreclosure work flat fee charged by HLO. Thus, the cost component of the "Accrued Foreclosure Legal Fees and Costs" portion of the Claim totaled $2,892.48. HLO attached six exhibits to the Application

in support of the requested compensation and reimbursement. The first page of Exhibit E contained a summary of the disbursements made by HLO in connection with the $2,892.48 cost component of the "Accrued Foreclosure Legal Fees and Costs" entitled "Expenses With Backup Invoices/Payments" and provided the following:

| [Vendor/Payee] | [Charge/Service] | [Amount] |
| --- | --- | --- |
| [1.] City of Quincy | Fee to Obtain Municipal Lien Ctf. . . . | $   25.00 |
| [2.] Northeast Abstract | Title Examination and title updates | $  447.00 |
| [3.] The Land Court | Filing Fee for Complaint to Foreclose . . . | $  255.00 |
| [4.] Patriot Ledger | Publications . . . | $1,621.20 |
| [5.] Registry of Deeds | Fee to Record Order of Notice . . . | $   76.00 |
| [6.] Norfolk Sheriff | O/N Service Date . . . | $   52.96 |
| [7.] Commonwealth Auct. | Auction Fee . . . | $  300.00 |
| [8.] Cert. Mail | See breakdown | $  109.02 |
|  | Total | $2,892.48 |

On March 18, 2010, the Debtors filed a Partial Objection to the Application, in which they objected to numerous charges which are summarized below.[3] HLO filed a response to the Partial Objection on March 22, 2010 (the "Response").

Neither party has requested oral argument or an evidentiary hearing, and the matter

---

[3] The Debtors raised no further objection in the Partial Objection to the amount of prepetition payment arrears ($20,580.50) or the accrued late fees ($476.64) listed in the Claim, *see* items 1 and 2, respectively, in the chart on page 2 above.

is now ripe for determination.

## III. DISCUSSION

### A. Charges Relating to the Recording the Order of Notice of Foreclosure

The Debtors objected to a $76 charge reflected in item 5 above, for the expense of "Fee to Record Order of Notice" as duplicative of a $75 charge included in an invoice paid by HLO to Northeast Abstract Company described on that invoice as "MA-Recording the Order of Notice." *See* Exhibit E, p. 4. According to the Debtors' review of the Norfolk County Registry of Deeds, only one Order of Notice was recorded in connection with the property, and therefore the $76 charge should be disallowed. HLO responded that the $76 charge indicated in item 5 was the fee charged by the registry of deeds for recording the Order of Notice of Foreclosure on the property,[4] and that the $75 charge reflected on the Northeast Abstract Company invoice was the fee charged to HLO by that title company which performed a title examination of the property. As such, HLO maintains, the charges are not duplicative because "[o]ne is to the Registry of Deeds and one is to the title Company for the [title] rundown." Response to Partial Objection at ¶1. The invoices issued by Northeast Abstract Company, however, contain separate charges of $50 and $58 for performing the title rundowns. The $75 charge on the invoice dated October 5, 2009 appears to be for the cost of "recording" the order of notice. Accordingly, the Court finds it to be duplicative of the $76 charge contained in item 5 above paid by HLO and the

---

[4] HLO attached to the Application a copy of a $76 check made payable to the Registry of Deeds. *See* Exhibit E, p. 8.

expense is therefore disallowed.

**B. Auctioneer Fees**

The Debtors object to a $300.00 charge reflected in item 7 above for auction fees paid to Commonwealth Auction Associates, Inc., on the ground that the invoice attached to the Application is devoid of any itemization of time spent or tasks performed, citing In re Aho, No. 09-41949-JBR, 2009 WL 3820327 (Bankr. D. Mass. Nov. 16, 2009). Additionally, the Debtors argue that because tasks performed by HLO attorneys and paralegals appear to be related to preparation of the foreclosure auction and the auctioneer's fees, which were incurred for an auction which never took place due to the Debtors' bankruptcy filing, the auctioneer's fees should be disallowed as duplicative of HLO's attorneys' fees. In further support of that argument, the Debtors note that the auctioneer, Commonwealth Auction Associates, Inc., and HLO are related entities which share a common president, secretary and director, namely Mark P. Harmon, Esq., and both entities operate from the same offices. HLO responds that the auctioneer's invoice is accompanied by a list of 17 tasks performed, although the Court is unable to find any list in either the Application or the Response. HLO asserts, without elaboration, that the $300 auction fee is not duplicative of the legal fees and costs of HLO, and that Mr. Harmon's interest in Commonwealth Auction Associates, Inc. is public information which it disclosed to its client. While the amount of the auctioneer's fee appears reasonable on its face, the claimant has failed to provide any information from which the Court can determine what work was actually performed or the reasonableness of the charges. Therefore, the $300 charge for the

auctioneer's fee is disallowed. *See* In re Aho, No. 09-41949-JBR, 2009 WL 3820327 *1 (Bankr. D. Mass. Nov. 16, 2009); In re Smuggler's Beach Properties, Inc. 149 B.R. 740, 743 (Bankr. D. Mass. 1993)("Reduction of compensation is appropriate where time records inadequately describe services, provide insufficient detail, or are incomprehensible.").

**C. Attorneys' Fees for Continuance of Foreclosure Sale**

The Debtors object to $250.00 in legal fees charged by HLO on October 6, 2009, a week after the petition date, for "Extra Work to Continue Foreclosure Sale from 10/1 to 11/5," reflected on Exhibit F to the Application, p. 3.[5]  The Debtors assert that the charge is improper because the work done was not itemized according to the time spent or categorized according to hourly segments and because the invoice date indicates that the foreclosure sale was continued postpetition in violation of the automatic stay, citing In re Lynn-Weaver, 385 B.R. 7, 11 (Bankr. D. Mass. 2008)(a single continuance of a foreclosure sale following the filing of a petition is not a violation of the automatic stay if, before the continued sale date, the creditor files an appropriate motion for relief from stay).  The Debtors add that the $250.00 amount is excessive because only $42.50 could be substantiated through a review of the attorney and paralegal time records set forth in Exhibit D to the Application.   HLO responded that the foreclosure sale was not continued postpetition, and that it was continued pursuant to instructions received by HLO prepetition on September 22, 2009 at the request of its client for purposes of reviewing the

---

[5] This amount is included in the $1,550.00 flat legal fee charged by HLO for the foreclosure work.

account for possible loan modification. Once the Debtors filed bankruptcy on September 28, 2009, it maintains, the continued auction set for November 5, 2009 was canceled. HLO referenced additional time entries in Exhibit D related to the continuance of the foreclosure sale to support the $250.00 fee, however such entries support only $133.00 in total fees, a difference of $117.00. The Court notes that this amount nearly totals the $116.10 difference between the foreclosure work flat fee charged by HLO ($1,550.00) and the actual time billed by HLO for foreclosure services ($1,711.10). Because the $250.00 charge for "Extra Work to Continue Foreclosure Sale from 10/1 to 11/5," is a component of the flat fee charged by HLO and the amount of any reduction is within a dollar of the actual time spent by HLO, the Court will not reduce the fees sought for this task. Additionally, the Court finds that HLO did not violate the automatic stay in continuing the sale.

**D. Certified Mail Charges**

The Debtors object to $109.02 in certified postage fees as set forth in item 8 of the chart on page 4 above as the Application contained no breakdown for the charge. In its Response, HLO attached copies of all but one of the mailing receipts which it could not locate. A review of the certified mail return receipts attached to the Response substantiate $83.10 in disbursements as one of the receipts is missing and four of them contain no indication of the amount of postage paid. Despite HLO's statement in the Response that the tracking number and cost of each mailing was detailed in Exhibit E to the Application, no such breakdown appears in that exhibit or elsewhere in the Application. The Court awards HLO reimbursement of $83.10 for certified mail expenses, and disallows the

8

balance of the charges.

**E. Miscellaneous Fees**

As discussed above, the claimant attached an itemized statement of additional charges to the Claim which included the following charges:

| [1.] Property Inspections/Preservation | $ 121.25 |
|---|---|
| [2.] Appraisal/BPO Fee | $ 95.00 |
| [3.] Post Petition Pre-Confirmation Legal Fees and Costs | $ 300.00 |
| [4.] Escrow Shortage | $ 2,591.97 |

The Debtors objects to these expenses because HLO provided no documentation in the Claim or Application to support them.  HLO conceded that it did not include documentation for these items in the Application because it previously supplied the Debtors with backup information on an informal basis.  Nevertheless, it provided a narrative summary of the charges with accounting histories in the Response to verify amounts charged. With respect to the Property Inspections/Preservation charges (item 1) and the Appraisal/BPO Fee (item 2), the Court finds the narrative explanations and the backup information provided by HLO sufficient to verify both the amount and reasonableness of the charges in the amount of $151.25[6] and $95.00, respectively.  With respect to the Postpetition Preconfirmation Legal Fees and Costs totaling $300 (item 3),

---

[6] The total of these fees was originally listed by HLO in the Claim as $121.25, but the accounting history attached to the Response substantiated the charge in the actual higher amount of $151.25.  HLO requested allowance in the higher amount which the Court finds reasonable under the circumstances.

HLO responded that this is a fee charged to the lender "to prepare and file the proof of claim, monitor the case until the plan has been filed and review the Chapter 13 plan for feasibility." It would appear from this description that this amount is a flat fee charged by HLO for a variety of services that were necessary following the commencement of the Debtors' bankruptcy filing, and the Court finds the amount requested reasonable. The Court approves reimbursement for these fees and expenses in the amount of $546.25

**F. Escrow Shortage**

Lastly, the Debtors object to Escrow Shortage charges in the amount of $2,591.97 (see item 4 on the chart on page 9 above) as the charge was unsupported by documentation both in the Claim and Application. In the Response, HLO provided a narrative explanation, the formula used (total escrow balance on petition date - prepetition escrow payments due but not paid by the Debtors + two months of escrow "cushion" = escrow shortage) as well as a loan history to support the charge. The Court finds the charge adequately supported and reasonable.

**IV. CONCLUSION**

In accordance with the foregoing, the Court shall enter an order sustaining in part and overruling in part the Debtors' Objection to Claim. The Court shall award $4,086.56 to HLO for "Accrued Foreclosure Fees and Costs" which includes $1,595.00 for fees and $2,491.56 in costs and allows in the full amount the remaining items in the "Itemized statement of pre-petition arrearage" appearing in the chart on page 2 above, including the increased charge of $151.25 for "Property Inspections/Preservation" (item 4). Accordingly,

the Court shall enter an order allowing the Claim in the amount of $254,080.06, which includes prepetition arrears and allowed costs and expenses of the mortgagee in the sum of $28,281.92. The Court shall sustain in part and overrule in part ASC's objection to confirmation of the Debtors' plan consistent with this Order and order the Debtors to file an amended plan within 30 days.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: June 10, 2010